# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PAUL PALMERIN, )
)
        Plaintiff, )
)
v. )
) No. 09-2579-CM
)
JOHNSON COUNTY, KANSAS BOARD )
OF COUNTY COMMISSIONERS, )
)
        Defendant. )
)

## MEMORANDUM AND ORDER

Plaintiff Paul Palmerin brings this civil rights employment discrimination and retaliation action against defendant Johnson County, Kansas Board of County Commissioners ("the County"), alleging claims of race discrimination (brought under 42 U.S.C. § 1981 and 42 U.S.C. § 1983), First Amendment violation (brought under 42 U.S.C. § 1983), and state law retaliatory discharge. Before the court is defendant's Motion for Summary Judgment (Doc. 31). For the reasons set out below, the court grants defendant's motion in part and denies it in part.

**I.**    **Factual and Procedural Background**[1]

Plaintiff, a 54-year-old Hispanic male, was employed as a crew leader by defendant in the Wastewater Department from on or about August 27, 1997, until he was discharged on February 11, 2009.

---

[1] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56. The court has combined the facts proposed by both parties and included only those that are relevant, material, and properly supported by the record.

Defendant contends plaintiff's employment was terminated for his use of racial slurs directed toward other employees in the workplace, specifically, reports that he called two Hispanic crew members "wetback" or "backwet."[2] Defendant also asserts that administrative investigations revealed that plaintiff "regularly made up rumors and falsehoods regarding coworkers to foment dissension amongst coworkers." (Doc. 30, at 19.) Prior to discharging plaintiff, the County held an informal appeal hearing to review the decision to terminate, at plaintiff's request and pursuant to its human resources policy. Although plaintiff was permitted to offer evidence, to testify, to present and cross-examine witnesses, and to have an attorney present, plaintiff contends that the hearing procedure was deficient because he was not afforded a *full* opportunity to testify and present evidence, and that "the panel merely rubber-stamped the [earlier] decision." (Doc. 35, at 89.)

Plaintiff denies ever using a racial slur and argues that this allegation, as defendant's proffered reason for terminating him, was pretextual and a "cover-up." (Doc. 35, at 90.) Instead, in his claims for wrongful discharge, free speech deprivation, and race discrimination, plaintiff cites several incidents that allegedly form the true basis for his ultimate termination. In general, plaintiff argues that defendant discriminated against him based on his race, and retaliated against him in violation of his First Amendment rights for his reports of discrimination, unsafe working conditions, improper personal use of County property, theft, and vandalism.

## II.     **Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2] Plaintiff allegedly used the term "backwet" to disparage a Hispanic employee's tendency to confuse the pronunciation of English words.

56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive

determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). However, the standard does not permit the court to make unreasonable factual inferences in favor of the non-moving party. *Carney v. City of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008).

## III. Discussion

### A. *Retaliatory Discharge Claim*

Plaintiff's first claim is for wrongful discharge under Kansas law. Kansas is an at-will employment state, which means that either employer or employee "may terminate the employment relationship at any time with or without cause." *Wiggins v. Hous. Auth. of Kan. City*, 916 P.2d 718, 721 (Kan. Ct. App. 1996). However, Kansas courts have established exceptions to this general rule, including that an employer may not terminate an employee for reasons that "seriously contravene[] a very clear public policy." *Morriss v. Coleman Co., Inc.*, 738 P.2d 841, 848 (Kan. 1987). Known as wrongful or retaliatory discharge, this cause of action makes it tortious to "terminat[e] . . . an employee in retaliation for the good faith reporting of a serious infraction of . . . rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials." *Palmer v. Brown*, 752 P.2d 685, 689–90 (Kan. 1988).

The Kansas Supreme Court laid out the elements of a *prima facie* retaliatory discharge case in *Palmer v. Brown*:

> To maintain such action, an employee has the burden of proving by clear and convincing evidence, under the facts of the case, [1] a reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; [2] the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and [3] the employee was discharged in retaliation for making the report. However, the whistle-blowing must have been done out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain.

-4-

*Id.* at 690.

The employee must prove a whistleblower claim by a preponderance of the evidence, but the evidence must be clear and convincing in nature. *Glover v. NMC Homecare, Inc.*, 106 F. Supp. 2d 1151, 1169 (D. Kan. 2000). If the employee establishes a *prima facie* case, the court will apply the burden-shifting process from *McDonnell Douglas*[3] and require the employer "to articulate a legitimate, non-retaliatory justification for the discharge." *Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1193 (10th Cir. 2002). "If the employer does so, the [employee] may then present evidence that the reason given by the employer is a mere pretext for the real, discriminatory reason for the adverse action." *Butler v. City of Prairie Village*, 172 F.3d 736, 752 (10th Cir. 1999).

The court has thoroughly reviewed the evidence offered by both parties in support of their positions. There are genuine issues of material fact in dispute as to this claim. To meet his burden of production, plaintiff points to the following four incidents he reported: a June 2008 incident in which a crew leader, Larry Boggs, was not wearing a hard hat when he was allegedly directed to; a December 2008 incident in which an employee, allegedly Mr. Boggs, removed or took from a common area several personal photographs belonging to plaintiff and others; the alleged vandalization of employee Ron Rutledge's cell phone; and the alleged unlawful use by Mr. Boggs of county property, specifically, personal use of a tire machine. (Doc. 32-26.) It appears that these complaints were received by management, and that an investigation was started. However, the investigation was not completed because a complaint submitted by Manuel Tovalin alleging plaintiff's use of racial slurs took priority and resulted in plaintiff's termination. Plaintiff cites the proximity in time of the reports to his termination in support of the causation requirement inherent in his claim.

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

A reasonable jury could find, based on the evidence viewed in a light most favorable to plaintiff, that (1) violations of rules, regulations, or the law were occurring; (2) defendant had knowledge of plaintiff's reporting of such violations prior to his termination; and (3) plaintiff was discharged in retaliation for these complaints.

Defendant, on the other hand, offers the declaration and deposition testimony of Employee Relations Manager Tiffany Hentschel, who received the complaint from Mr. Tovalin concerning plaintiff's repeated use of the terms "wetback" and "backwet" in reference to Mr. Tovalin and Ruben Totolero, two Hispanic employees who were working under plaintiff's direction and control. Ms. Hentschel investigated the report, and she and Kurt Winters, Director of Operations and Maintenance, determined that termination was the appropriate action. John O'Neill, General Manager, Johnson County Wastewater, approved their recommendation. At the appeals hearing, at least four Wastewater employees testified that they had heard plaintiff use the terms. Mr. Tovalin testified that plaintiff referred to him in that manner at least twenty to thirty times, despite his requests that plaintiff stop doing so. Indeed, in his deposition, plaintiff admits to calling Mr. Totolero "backwet," but asserts that it was "not a racial slur." (Doc. 35-4, at 10, 24.) Furthermore, defendant's evidence draws into question plaintiff's motivation for making the reports. (Doc. 35-11, at 13 (Darrell Thornbrugh testified that Boggs believed he was being harassed by plaintiff; Thornbrugh reported this).)

In support of his burden to establish pretext, plaintiff also offers the declarations and deposition testimony of current or past Wastewater employees who maintain they never heard plaintiff say "wetback," (Docs. 35-6, at 3; 35-2; 35-3), and who allege—with specific examples—that there is or previously was ongoing harassing and inappropriate conduct in the Wastewater Department (Docs. 35-6; 35-7; 35-8, at 7–9). These individuals also swear that they

-6-

themselves have been the subject of retaliation for testifying in support of plaintiff at his appeal hearing. (Doc. 35-6, at 9, 13.)

Although plaintiff's admission that he used the term "backwet" seriously undermines his position, this court will not make the findings of fact or determinations of credibility necessary to resolve this claim. Accordingly, defendant's motion for summary judgment as to plaintiff's wrongful discharge claim is denied.

### B.     *Free Speech Claim Under 42 U.S.C. § 1983*

Plaintiff next asserts that he was retaliated against for exercising his right to free speech under the First Amendment. The complaint asserts that "[s]pecifically, Plaintiff spoke out about theft and vandalism of employee property and the unauthorized use of County property by its employees for their own personal use. Plaintiff also spoke out about various acts of discrimination, retaliation, and harassment and other unlawful acts that had occurred and County employees were being subjected to." (Doc. 15, at 18–19.) The speech at issue here appears to include: the report of the hard hat incident with Mr. Boggs; the report of the removal of personal photographs from a workplace common area and the alleged cell phone vandalization; the report of Mr. Boggs' alleged unlawful use of the tire machine; and assertions to Ms. Hentschel and at the appeal hearing regarding alleged past workplace misconduct by Mr. Boggs, and possibly others. (Doc. 32-26.); *see infra* p. 12.

The court applies the five-part analysis from *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Garcetti v. Ceballos*, 547 U.S. 410 (2006), in evaluating plaintiff's First Amendment retaliation claim. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007). The Tenth Circuit has succinctly summarized the five steps of this analysis:

> (1) whether the speech was made pursuant to an employee's official

> duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009).

"The first three steps of the *Garcetti/Pickering* analysis are issues of law 'to be resolved by the district court, while the last two are ordinarily for the trier of fact.'" *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010) (quoting *Brammer-Hoelter*, 492 F.3d at 1203). On a motion for summary judgment, the court must view the facts relevant to those issues of law in the light most favorable to the nonmoving party.

As to the first step, the Tenth Circuit has taken "a broad view of the meaning of speech that is pursuant to an employee's official duties." *Id.* at 746 (citing *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008)). While there are no bright-line rules that apply to this determination, "the content of the speech, as well as the employee's chosen audience" are relevant to the analysis. *Id.* Importantly, the Tenth Circuit has found that "speech pursuant to the employee's duty to report a particular activity is usually within that employee's official duties." *Rohrbaugh*, 596 F.3d at 746–47 (citing *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1329 (10th Cir. 2007)). As to the employee's chosen audience, "speech directed at an individual or entity outside of an employee's chain of command is often outside of an employee's official duties." *Id.* at 747. And although "speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials clearly concerns matters of public import," *Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir. 1998), the court must consider the motive of the speaker and whether the speech is calculated to disclose misconduct or merely [to deal] with personal disputes and grievances

unrelated to the public's interest," *Brammer-Hoelter*, 492 F.3d at 1205; *see also Deutsch v. Jordan*, 618 F.3d 1093, 1097–1101 (10th Cir. 2010).

Each of these considerations suggests that plaintiff spoke pursuant to his official duties when he reported possible violations of County safety policies and personnel rules by other employees. As a County employee, plaintiff had a duty to report misconduct by coworkers under the County's human resources policies. Plaintiff suggests that an employer's policies regarding reporting unlawful or improper conduct cannot form a basis for a determination that plaintiff was within his official duties. (Doc. 35, at 74, n.11.) However, plaintiff's speech is more similar to personal workplace complaints or disputes than to "'communicating with newspapers or . . . legislators"; "writing a letter to a local newspaper"; or "discussing politics with a coworker." *See Rohrbough*, 596 F.3d at 746 (citations omitted); *Casey*, 473 F.3d at 1329 (holding that speech made pursuant to an employee's duty to report to her employer regarding the legality of the employer's operations was within the scope of her official duties). Plaintiff's reports regarding internal employee-relation matters cannot serve as a basis for his First Amendment claim. *See Lauck v. Campbell County*, 627 F. 3d 805, 815 (10th Cir. 2010).

The court next considers whether the speech was on a matter of public concern. Speech on matters that are "internal in scope and personal in nature" is not protected. *Brammer-Hoelter*, 492 F.3d at 1206 (citing *Bunger v. Univ. of Okla.*, 95 F.3d 987, 992 (10th Cir. 1996)). Speech on "internal departmental affairs and personal interest" is not a matter of public concern. *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996). In contrast, "[m]atters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of

-9-

value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. at 147–48.

After review of the evidence and the relevant case law, and for many of the reasons set out above, the court concludes that plaintiff was not speaking on matters of public concern. Summary judgment is appropriate for this claim because the court "remain[s] free . . . to skip the *Garcetti* analysis and dismiss or grant summary judgment on the basis of the traditional *Pickering* analysis when a claim clearly fails because the matters discussed are not matters of public concern." *Brammer-Hoelter*, 492 F.3d at 1203 n.4. Accordingly, defendant's motion for summary judgment as to plaintiff's free speech claim is granted. Plaintiff's free speech deprivation claim is dismissed.

### C.     *Equal Protection / Race Discrimination Under 42 U.S.C. §§ 1981, 1983*

Although plaintiff presents these as two separate claims, 42 U.S.C. § 1983 provides the vehicle for plaintiff's 42 U.S.C. § 1981 claim against defendant. *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1134–37 (10th Cir. 2006). Municipal entities, such as defendant, are considered "persons" to whom § 1983 liability applies. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (citing *Monell v. N.Y. City Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978)).

"'In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII.'" *Carney v. City of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005)). As in this case, where direct evidence of discrimination is absent, race discrimination claims are to be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008). Under the burden-shifting

of *McDonnell Douglas*, the plaintiff must initially establish a prima facie case of discrimination. 411 U.S. at 802. Then, defendant must offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* at 802–03; *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). If the defendant does so, then the burden reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual *i.e.*, unworthy of belief." *Marx v. Schnuck Mkts, Inc.*, 76 F.3d 324, 327 (10th Cir. 1996).

Generally speaking, to establish a prima facie case of race discrimination, plaintiff must prove: (1) he is a member of a protected class; (2) he qualified for the position or was doing satisfactory work; (3) he was subject to some adverse employment decision; and (4) the adverse decision occurred under circumstances giving rise to an inference of unlawful discrimination. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007) (quoting *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005)).

Because a municipality cannot be held liable under § 1983 based solely on a theory of respondeat superior, there is an additional requirement for municipal liability. Plaintiff must show (1) the discriminatory action is representative of an official municipal policy or custom, or are taken by an official with final policy-making authority; and (2) that there is "a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993–94 (10th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)); *see also Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999) (quoting *Randle*, 69 F.3d at 446–50). The municipal policy must be a "'policy statement, ordinance, regulation, or decision officially adopted and promulgated'" to warrant liability. *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279 (10th Cir. 2009) (quoting *Monell*, 436 U.S. at 690)). A municipal custom may exist when "the discriminatory practice is 'so

permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Murrell*, 186 F.3d at 1249 (quoting *Lankford*, 73 F.3d at 286).

In this case, there is no dispute that plaintiff is Hispanic and that his employment was terminated despite many years of satisfactory—even commendable—service with the department. But plaintiff must present evidence giving rise to an inference that his termination was a result of a race discrimination. The court believes that, based on the evidence presented, a reasonable jury could infer that the termination was a result of race discrimination. While a reasonable jury could also find for defendant, the court cannot, as a matter of law, make that finding from the record before it.[4]

However, plaintiff must also present evidence of a permanent and well-settled municipal custom of discrimination, and evidence directly linking this discriminatory custom to plaintiff's

---

[4] To establish discrimination, plaintiff points to defendant's treatment of a Caucasian crew leader, Larry Boggs, who plaintiff asserts was similarly situated to himself, and who allegedly committed more egregious acts many times over and yet was not terminated. The allegations are supported by plaintiff's own testimony, and are contradicted by the testimony of others. For example, plaintiff asserts that Mr. Boggs once told plaintiff and Mr. Totolero that "you wetbacks need to move back to Mexico." (See Doc. 35-4, at 4, 47.) Plaintiff asserts that Darrell Thornbrugh overheard the statement. However, Mr. Boggs, Mr. Totolero, and Mr. Thornbrugh all deny this assertion.

Plaintiff also asserts that Mr. Boggs made inappropriate comments to Mr. Rutledge two years earlier; that Mr. Boggs said "I don't do nigger work" (Docs. 35-4, at 31; 35-3, at 1); that Mr. Boggs had called Logan Meacham names resulting in Meacham having a "breakdown"; and that Mr. Boggs once told a female coworker, Tanya Nibarger, to "stick a finger in her[self] and smell it." (Doc. 32, at 19; 35-4 at 49.) Mr. Boggs, Mr. Meacham, and Ms. Nibarger all deny that these events ever occurred. In fact, Mr. Meacham indicated it was plaintiff, not Mr. Boggs, who had given him "trouble" and "called [Meacham] names until [Meacham] became so angry and upset that [he] threw a large line cleaning saw across a yard." (Doc. 32-29, at 2.)

Plaintiff offers evidence that Mr. Boggs was subject to discipline in 2007 (unpaid suspension) for "insensitive and demeaning comments" in violation of Policy 106 prohibiting "inappropriate harassing, or disruptive behavior." (Docs. 35-16, at 1; 35-15, at 1.) Mr. Boggs was twice subject to discipline (written reprimands) in 2009, for personal use of county property (Doc. 35-17, at 1), and for horseplay with a coworker resulting in injury (Doc. 35-18, at 1).

termination. The evidence offered, even viewed most favorably to plaintiff, fails to show that there is a genuine issue for trial.

In an attempt to demonstrate the existence of a custom, plaintiff would ask a fact-finder to look beyond the anti-discrimination policies contained in defendant's Johnson County Human Resource Policies and Procedures, and instead consider evidence of longstanding disregard of those policies; evidence that harassing, discriminatory conduct was common in the department; and that the stated policies regarding anti-discrimination were not consistently applied or enforced. In support, plaintiff asserts that he had heard the following other employees refer to Mr. Totolero and Mr. Tovalin as "wetbacks": Greg Gray, crew member; Greg Decker, crew leader; Logan Meacham, Crew Member; Ryan Guerra, crew leader; and Kevin Boggs, crew leader. Every one of these employees, as well as Mr. Totolero and Mr. Tovalin, contradict this assertion.

Plaintiff also offers the declarations and deposition testimony of Vernon Schrock that Darrell Thornbrugh once referred to himself as a "hilbilly" or "redneck" (Doc. 35-10, at 11); and of Ron Edwards and Richard Alexander that harassing, retaliatory, and discriminating conduct was common in the Wastewater department (Docs. 35-2, 35-2, 35-5, 35-7). Plaintiff suggests that, some three years earlier, an employee called another employee "a mexican donkey." (Doc. 35-4, at 45–46, 54.) Plaintiff's evidence does not establish a custom. At best, plaintiff's evidence constitutes a series of isolated incidents occurring over the course of several years, including during time prior to the effective date of Johnson County's Human Resource Policies and Procedures. Moreover, plaintiff fails to show any nexus between any of these statements or conduct and the ultimate decision by the defendant to terminate plaintiff's employment.

Nor does plaintiff establish that an official with final policy-making authority violated plaintiff's rights. John O'Neill, General Manger, possessed—and exercised—the authority to

terminate plaintiff's employment after consultation with Human Resources—that is, with Ms. Hentschel and Mr. Winters. The decision was upheld by a panel of County managers. This procedure was all proscribed by the Human Resource Policies and Procedures. Plaintiff offers no evidence that Mr. O'Neill's decision, or the decision of the panel, was a product of race discrimination; nor does plaintiff offer evidence that Mr. O'Neill or the panel were final policy-makers as that term has been defined by the Tenth Circuit. *See, e.g., Randle*, 69 F. 3d at 448.

Plaintiff fails to make his prima facie case because he fails to establish a genuine issue of fact regarding the existence of a custom of discrimination having the "force of law," and plaintiff offers no evidence directly linking any such discriminatory custom to plaintiff's termination. *See Murrell*, 186 F.3d at 1249.

Even assuming that plaintiff could meet the initial burden of production to establish a prima facie case of race discrimination, defendant has articulated a facially non-discriminatory reason for terminating plaintiff: his inappropriate and offensive use of racial slurs against two employees working under his direction and control.[5] And plaintiff is unable to present evidence from which an inference can be drawn that the proffered reason is pretextual and was instead based on plaintiff's race or ethnicity: "[m]ere conjecture that an employer acted with discriminatory reasons will not suffice to establish pretext." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004). Even viewed in the light most favorable to plaintiff, no reasonable jury could determine that a racially

---

[5] Additionally, defendant offers evidence indicating that it is an equal opportunity employer, and it is defendant's policy "not to discriminate against any employee or applicant for employment because of race, color, sex, religion or creed, age, disability, pregnancy, ancestry or national origin, military status, or membership or service in the military." (Doc. 32-4, at 1.) Since implementing the new County policies in January 2006, Johnson County has investigated every report made to the Human Resources Department and has consistently disciplined employees who have violated such policies.

-14-

discriminatory reason more likely motivated defendant's conduct. Accordingly, defendant's motion for summary judgment as to plaintiff's race discrimination claim is granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 31) is granted in part and denied in part. Plaintiff's state law retaliatory discharge claim will proceed; his claims of race discrimination (brought under 42 U.S.C. § 1981 and 42 U.S.C. § 1983), and First Amendment violation (brought under 42 U.S.C. § 1983) are dismissed.

Dated this 1st day of March, 2011 at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**